Please all rise and hear ye, hear ye. This Honorable Appellate Court for the 2nd Judicial District is now open. The Honorable Robert D. McClary is presiding. Please be seated. Your Honor, the first case on the docket this morning is 2-22-0019. Highview Group, Ltd. v. Simon Sarkis, plaintiff's appellees, v. William Ryan Homes, Inc. and North Shore Builders I, Inc., defendant's appellants. Arguing for the appellants, Mr. Michael Poslowski. Arguing for the appellees, Mr. Joseph T. Morrison. Mr. Poslowski, you may proceed. Thank you, Your Honor. Good morning, Your Honors. Good morning. The truth matters. This is an uncontroversial position, and the truth is a hallmark of our adversarial system. It's the reason why answers to interrogatories need to be verified. It's the reason why document productions must be accompanied by an affidavit of completeness. Did the court say no? The truth didn't or wouldn't have made any difference in this case? The underlying court essentially did find that by finding that William Ryan Homes did not allege a meritorious defense. That's correct. Thank you. Mr. Kosowski, the plaintiff argues that the testimony of Hanson and Westcott made the defendant's false testimony essentially insignificant, that the verdict would not have been effective. What's your response to that? Response to that is in two parts. So, first, the testimony of Mr. Swarthout, the key witness and a party to this case, could not have been irrelevant. And the fact that William Ryan Homes was prevented from impeaching him at trial, I think, is relevant and is material under Cartwright. The credibility of a star witness is sufficient to show a meritorious defense. That's point number one. Point number two is, even with that, Black also testified at trial and testified that he was the one that created the engineering, the plats, and the survey. And both Swarthout and Black testified at length about those materials that were part of the, quote, expensive materials that was the benefit that was conferred on William Ryan Homes. So, Swarthout's false testimony or the impeachment would have been relevant, I think, for both of those points. But Black was not, he was not questioned regarding what he was owed, was he? Black was not specifically questioned regarding amounts that he was owed. However, Black did testify at length about the work that was performed and the materials that were created, which goes to the benefit. And had Mr. Swarthout told the truth, William Ryan Homes would have been able, on cross-examination, for example, to elicit testimony that all of that work did not cost Mr. Swarthout anything. And therefore, the benefit, there was no benefit conferred. And even if there was a benefit conferred, the fact that those materials did not cost anything suggests that it does not violate the fundamental principles of justice, fairness, and equity, which is required to be shown in order to succeed on a claim for unjust enrichment. Were there invoices and receipts and things produced at this trial? No, Your Honor. There were no invoices, no receipts. Virtually the only evidence concerning the damages or the amount of expenses incurred by Swarthout and the benefit conferred on Ryan Homes was Mr. Swarthout's own testimony. But he asked, well, he said there was over a million dollars' worth of expenses that had already been incurred, yet the jury only came to about half of that. So what did they use? What were they looking at? I wish I was in the jury room, Your Honor. We probably will never know exactly what the jury was looking at. The appellate court noted that you could come up to that $510,000 damages number a few different ways. And the way that the appellate court sort of backed into it was based on what was called the worst-case scenario in the underlying trial. That would be, and you get to $510,000 as follows, $250,000 for Mr. Swarthout's expenses, $250,000 for a developer fee, and then there was a $10,000 fee per lot. It looks like the jury probably just used one lot to get to the $250,000, $250,000, and $10,000 to get you to $500,000. Well, my point then is if you're using that worst-case scenario, which is about $250,000 for his expenses, why then is, maybe this was Judge Barona's thought, why then is his testimony about this secret side deal such an issue? For a couple reasons. First, that $250,000 number also aligns directly with what Mr. Swarthout later testified was included in that million-dollar number as being owed to Black. So in the second lawsuit, Mr. Swarthout testifies that $250,000 number that was related to Black was included in that million. So that is an interesting coincidence. And the issue about Mr. Swarthout's testimony here is twofold. First, had Ryan Holmes known back in the discovery phase that, in fact, these expenses weren't owed to Black, I think it would have been an entirely different trial. There would have been, I think, more discovery about what expenses were owed to others, for example, and the value that was conferred on Ryan Holmes. And then there's also, again, the impeachment issue, of course. Well, Ryan Holmes is no fleshling in the building business, and they've had to put together surveys, and they've had to put together plaques, and they've had to get permits from IEPA, I'm sure, and other places. They have some idea of what these issues cost, and they're the ones that actually proposed this worst-case scenario of the $250,000 for the expenses. So, again, why is this a big surprise? And that worst-case scenario was based on the facts as known to Ryan Holmes at that time, which the entire time throughout the underlying project, throughout the trial, and on appeal, the facts were that Thomas Worthout owed Black hundreds of thousands of dollars for these materials. And so for Ryan Holmes to say, well, we'll pay you for those materials, is essentially what the worst-case scenario was. You know, we'll get your developer fee, we'll pay you for the materials, and that's your worst-case scenario. Well, those words coming out of Mr. Ryan's mouth were, at the time, based on the facts that he thought were true, and that he had good reason to think were true. With respect to that, Mr. Swarthart never produced what Ryan Holmes requested, correct? His costs, was that ever produced? There was an exhibit to interrogatories produced. That exhibit is a spreadsheet that shows the costs incurred. It's in the record at A128. And so Ryan Holmes serves an interrogatory asking Thomas Worthout to say, please list all expenses incurred. Thomas Worthout answers that interrogatory and says, see exhibit A, this chart, which is at A128. That chart includes a line item for black engineering that shows roughly $8,300 had been paid, and another $175,000 had been incurred and was owed. And then at trial, there was not testimony directly about what was owed specifically to black versus others. Instead, the overall number was given, the $1 million in expenses. The statement by your client about the worst case scenario, when he made that statement, was he aware of the side agreement? Absolutely not. And if he had known about the side agreement, would he have possibly said something slightly different? I think so. And the reason for that is because the worst case scenario is broken out in such a way to include a line item for sunk costs. And that makes sense. And so had Mr. Ryan been aware that there wasn't, in fact, $250,000 in sunk costs because nothing was owed to black, I think it's reasonable to conclude that Mr. Ryan's worst case scenario would have been different. Have you advised your client in the future when he talks about worst case scenarios that he should say, based upon the knowledge that I presently have on such and such a date at such and such a time? As a litigator, Your Honor, I could only wish that my clients would include such details and qualifying statements in their emails. With respect to what I had just asked, this is a spreadsheet or a list of items. I was talking about the actual receipts, the documentation, the bills that were given to him. Were those produced? No, those were not produced. And if the false testimony or false accusations in the interrogatories, had they been known, that that could have affected the credibility of this spreadsheet? Absolutely, 100 percent correct. Just like a Brady violation in a criminal case. That's exactly right. That's exactly right. Because when, for example, we were looking at the spreadsheet, there's a line item for black. It says costs incurred. And then Ryan Holmes finds out, well, actually it's not incurred. Well, now that calls into question every other cost that's incurred. Discovery would have been different. The trial would have been different. It would have been based on the truth. And that's what 214.01 requires. And that's the lover's case. So the fact that Ryan Holmes was unable to probe into these issues, because it had no reason to, in discovery. Ryan Holmes shouldn't be penalized for that. Lover says the opposite. That when a defendant or a counterparty conceals material facts, or is less than truthful in discovery, that we, as Ryan Holmes, are not required to anticipate that. Instead, we're entitled to rely on the verification. We're entitled to rely on the affidavit of certification. We're entitled to rely on the trial testimony. Was there a representation made by counsel for plaintiff that they had provided the documentation to defense? I'm not sure about that. I'm not recalling that in the record. My understanding is that Exhibit A was the authoritative document, was looked at as the authoritative document throughout the underlying trial. Well, Mr. Bleck's work product, at some point, was known to Ryan Holmes. Absolutely. Mr. Bleck's work product, specifically the engineering drawings, were known to Ryan Holmes. And I believe they were even used as exhibits in the underlying trial. There were comparisons done. Okay. Now, once again, I'm going to go back to your statement that we should have accepted that, but we don't have to anticipate something when we look at that spreadsheet. It says what it says, and that's what it should be. Your client has, I don't know if they're as old as the high view, but they've been around for a little bit, and they've been successful for some time. And there's no evidence that they ever entered into agreements of this nature in this record or in depositions of a side agreement with a partner or someone who wanted to remain off the record? Absolutely not. It came as a complete and total shock in the Bleck's lawsuit. To you, for them, but they'd never encountered this themselves? There's nothing in the record that they ever encountered something like this themselves? They ever made a deal like this themselves? Not to my knowledge. This is not the secret side agreement, so to speak, or this sort of unusual funding arrangement. It's not something that is typical or that Ryan Holmes would anticipate in a real estate industry, no. What is the status of the Bleck litigation? The Bleck litigation is concluded, and I believe judgment was entered in favor of William Ryan Holmes on one of them. I believe the remaining counts were voluntarily dismissed or they're not proceeding. So the Bleck lawsuit has concluded. And so going back to the 214-01 petition and the meritorious defense. So I think the truth here is a meritorious defense, and that's the lover's case. Had Mr. Swarthout told the truth, we would have had different discovery, we would have had a different trial, and we would have had different facts. And those facts, as alleged by Ryan Holmes in his petition, would have allowed Ryan Holmes to demonstrate that the materials were not expensive, that they were not valuable, and that there was not this fundamental disequilibrium where Ryan Holmes is getting a million dollars of benefit and Swarthout's left holding the cost bag. That equilibrium, that picture would have been different. So we have the truth as a meritorious defense. And separate and apart from that, though, we have Cartwright and the impeachment issues. And as we argued below, and as I will continue to argue to your honors, I think this case is indistinguishable from Cartwright. We have Mr. Swarthout, the star witness, testifying on a claim for unjust enrichment, and there is a material fact here about the exact subject matter of the unjust enrichment, the benefit conferred on Ryan Holmes, and Thomas Swarthout lied about it. In a trial courtroom in front of a jury, that credibility can be devastating. So was that his only deceitful response or, you know, the answers to the interrogatories? I stopped counting the number of times he said he was owed a million dollars. So I can answer your question in two parts. May I finish? Thank you. So first, we don't know. He may have lied about other expenses. We don't know what we don't know. Second, in the underlying trial, there are three key places where he lied. Interrogatory number four. Then in the motion response to the motion to eliminate, Mr. Swarthout says, this is a measure of my damages, the amount owed to Black, and I'm planning on paying Black from the money I get in this lawsuit. And then third would be at trial when he says he has a million dollars in expenses, but later confirmed in the Black lawsuit that that, in fact, was not true. Well, did he confirm that the entire million dollars was not an issue or just the Black issue? The testimony is as follows. There were a million dollars in expenses in the underlying trial, and then in the Black lawsuit, Mr. Swarthout testifies that that million dollars included the 250, quote, owed to Black, even though the 250 was not actually owed to Black. I have a question. Normally unjust enrichment relates to the value of the defendant which the plaintiff is attempting to obtain. They're not attempting to obtain damages that might have arised out of a breach of the contract. And I can see a correlation between damages of unjust enrichment or expenses. And it seemed in this instance that most of the evidence relating to unjust enrichment was testimony rather than documentation. Of expenses. Was there any evidence that a jury could base a judgment on relating to what the value of the work that was supposedly turned over to the defendant was worth to the defendant? I think not be a... Did the defendant ever testify to things like, well, we didn't use the plat of subdivision because we made our own. We had permits that expired, so we had to reapply. So things like that that would indicate that, yes, you made a taco salad. But by the time we got it, it was full of maggots and the lettuce was wilted. So what's the value? What was the testimony, what was the evidence that related to just exactly what the worth was to your client? So there was testimony on behalf of Ryan Holmes that the materials were not particularly valuable. That your taco salad analogy, I think, is right on the money. That Ryan Holmes needed to redo the drawings and needed to essentially recreate this work product. As far as the value to the defendant, that evidence is primarily the testimony of Swarthout and Bleck going through the process of going through and comparing the plans that were created by Bleck and the plans that were created by Ryan Holmes, and demonstrating the costs that Swarthout incurred to create those materials. Was the defense argument ever that it's really not so much what the value was to the client, but the plaintiff, insofar as denominating his expenses, as opposed to the expenses of the defendant, and what, in relation to those expenses, the documentation or the work product that was provided by the plaintiff diminished or, if you subtract that or add it on, would have increased the expenses of the defendant? There's certainly evidence in the record at the underlying trial that the proper measure of damages was the defendant's gain and not the plaintiff's loss. And there was evidence presented that suggests that the defendants really didn't gain that much net-net in terms of the damages that were incurred by the plaintiff, and that the plaintiff didn't lose that much net-net in terms of the damages that were incurred by the plaintiff. So I think that's a good point. I think that's a good point. Thank you. Please report and counsel. The question in this case is, does the petition under Defute-1401 allege facts that are not appearing in the record, which, if known at the time the judgment was entered, would have prevented that judgment? A meritorious defense. A meritorious defense is one which defeats the cause of action. In this case, there are no allegations aside from the secret side agreement. Am I to understand your argument is, if your client obtained a judgment of $10, and the defense, had it been presented properly, would have reduced that down to one penny, that the judgment should not be vacated? Because you said the cause of action would be terminated or would be affected, which means that it's either all or none in my purview or my opinion. At least that's what it seems to be the argument that you're making. I don't think I'm, hopefully I'm not going that far. But we have liability and we have damages. So the question on liability is, how does this alleged secret side agreement affect liability? We presume that there was a secret side agreement. When we look at whether or not we're going to grant relief, we examine the evidence in the light most favorable and we accept all well pleaded allegations. I understand that. When did you first become aware of the secret side agreement? That your client didn't owe black any money? At the time of the depositions, the testimony that he gave in the black case. That was the first time that you were aware of it? Yes, sir. Do you now concede that was a lie, that the responses to the interrogatories was a lie? No. Why don't? Because what was the side agreement? The side agreement is black's work. There's no dispute on the value of black's work. It's a question of whether Mr. Swarthout owes any money for that. And the testimony of the secret side agreement was that black would get paid if Mr. Swarthout found a developer and was able to purchase the property and start the development, he would then get paid. That was the case against Ryan Holmes. The case against Ryan Holmes was, you should have been our partner. We wanted you to be our partner. We expected you to be our partner. And all the while, the ultimate testimony from both Nate Wensma and from Mr. Ryan himself was, we never considered Swarthout a partner. So the case went in on expenses incurred in the development because Mr. Swarthout expected that those expenses would get reimbursed by Mr. Ryan, by the developer, by the developer's money coming in, and that's how the funding would happen. Do you agree with Mr. Kozlowski that your client said that he was planning on paying Mr. Black or Black Engineering in this proceeding? I think he did say that. Did he do it? I don't know. Well, if he didn't do it, or put another way, if he did do it, why would Mr. Black attempt a double recovery in litigation against the defendants? I'm assuming that Black did not get paid. Mr. Ryan did not pay him, obviously, because of the Black lawsuit. You mentioned that there were two aspects. One was liability and the other was damages. Am I to assume that your argument is that the deceits that were essentially of record, and which we are, I believe, supposed to take as true for purposes of de novo review of this denial, that the impeachment or the amount of impeachment would have a telling effect on not only the damages but the liability in this case? Because the record seems to reflect that Mr. Swarthout was, as has been said, he was a star witness. And if he was the star witness and he would be impeached by these things, would not a rational trier of fact consider such an impeachment for purposes of liability as well as damages? Just because, as you said during your argument previously here, that the jury didn't believe the defendants when the claim was that they didn't really use, and contrary to what they did actively, they didn't say they were going to do what they did actively. And therefore, maybe the jury considered the credibility of the defendant in that regard for purposes of both liability and damages. Well, certainly, engaging in speculation, I suggest, but certainly it is possible that that might have some effect on the jury. We don't know. The point is that I don't know how that impeachment would ever take place, though, because what the complaint is, is we didn't disclose the side agreement. We didn't. They're saying, had we known about the side agreement, the result would have been different. Well, certainly, there is no suggestion that Mr. Swarthout would get impeached if, in fact, he told the alleged truth about the side agreement. Well, you know what? I don't think that impeachment ever would have occurred. With respect to that, okay. You're saying it would not have had an effect on the ultimate outcome. Right. When your client was testifying, he could not recall if he had exact receipts for the list of expenses that are listed in A128. Well, what happened in trial was that I sought to admit into evidence Exhibit A. You have to remember that the trial court had ruled that the expenses were relevant only to the breach of contract action. They were not relevant to your client's credibility. Right. So my point is that it's not just an isolated item. It's your client's full testimony that's being reviewed by a jury in terms of his credibility. Correct. I go back to my point, which was, had the side agreement been disclosed, then I don't know how his credibility would have been intact at the time of trial because he would have testified to the side agreement. They would have elicited it at trial. By the time of trial, the lie in the interrogatories would have been found out had you disclosed the side agreement. Right? And then he could have been impeached with that. But that's assumed that the disclosure was made after the answer to the interrogatory. Well, we won't know that, right? Well, hopefully. You found out at the same time as the defendant. Correct. Have you ever heard of a counterfactual conditional? I'm sorry, I have not. In law school, we were told that an assault wasn't an assault because someone with a rapier said to the alleged victim, if this weren't a size A, I would run you through. Well, the counterfactual aspect of that conditional statement is that it was a size A. And since it was a size A, he was not going to run the victim through with his sword because if he did it, he would be taken before the court of assizes that was in session on that particular day, and punishment would be needed out instantly. And a counterfactual conditional is a statement that is logical except for one basic fact. It doesn't factually exist. You said that your client would have done things differently if there had been certain discovery given. The problem was there wasn't certain discovery given. So your statement is nothing more than a hypothetical rationalization for something that didn't exist. It's like the state once said about a juvenile prosecution as an adult. There would have been no problem. Or I shouldn't say that. They said, well, we could have solved this problem by having a hearing on a transfer. And that's true, except they didn't do it. And so your statement, if you would like to respond to the fact that it was a rational defense to something that didn't happen. Well, we don't know exactly when in discovery this signed agreement would have been testified to. If the signed agreement is disclosed and the answer is erratic, I understand that it was not. But that's the exercise we're doing, though. We're saying what if, right? What if this disclosure was made? What if there was a signed agreement? And apparently there was. And if there was a signed agreement, why wasn't it disclosed? Or in the alternative, why was the claim made by your client that not only that he owed this amount, but that he was going to pay it if, under the circumstances, a contradictory fact was that he didn't have to pay it. He was under no legal obligation to pay it because he had the signed agreement. So the rational process, the logical process by which one determines their case in chief, is based upon the agreements and the actions that were taken historically. And in this instance, there was a signed agreement, which means that if your client is arguing a syllogism that conflicts with the signed agreement, it would seem that if your client is a rational human being, that they would not make the argument that they did. So when you say we didn't know or we didn't do these things, the point is you did know that there was a signed agreement and you acted in a way inconsistent with that knowledge. And I suggest that that's not true. Pardon? I suggest that the signed agreement is if Mr. Schwartzbock can't find the developer and he doesn't develop the property, doesn't buy the property, then Mr. Buck is not going to be paid by Mr. Schwartzbock. That was the signed agreement. But this case involved a suit against that very developer that if the developer had done what we thought he was going to do and become our partner, then... No, wait a minute. Then they're liable for these damages, and the damages are the bills of Mr. Buck that he incurred. Wait a minute. And that was the agreement. The agreement was if Ryan, in essence, if Ryan came along and came into this development, then Buck would have gotten paid. Wait a minute. That would be the agreement. So your premise is that he was actually telling the truth even though it wasn't the truth. What is a lie? What is a lie? A lie is not telling the truth. And the interrogatories, the answers to the interrogatories were made after he knew that Ryan was not going to be paying him. Correct? So the answer to the question on the interrogatories and what he owed Buck should have been zero and not $175,000. Correct? No. I don't agree with that. Counsel, you've also made the argument within the last three minutes that the rationale here is based upon a breach of contract because you clearly stated that this rationale for why or what happened insofar as the strategy and the presentment of your client's case was this is what would have happened had there been a valid contract that was actually entered into and executed by the parties, which is a breach of contract case. It is not unjust enrichment. But the case was tried on two counts. The case was tried under implied breach of contract and unjust enrichment. Those were the two causes of action. So it was a breach of contract action that I was trying in front of the jury. And what did the jury verdict say or give you insofar as those two counts? As far as the breach of contract count, I was not guilty. Okay. As far as the unjust enrichment count, that was the $510,000. Which this court explained in its opinion that says it's not the expenses, it's not the damages to him. It is the unjust enrichment to them. They got a lot more than what's planned. We said in that disposition, paragraph 12, which the defendant points out in their brief, Swarthout hired an engineer, Michael Bleck, and land planner, Nicholas Patera, from Tesco Associates to implement his concepts at considerable expense. Okay? So this court was under the impression that your client hired Mr. Bleck at considerable expense, when in fact there was no expense. Right? I respectfully suggest that that's not correct. I respectfully suggest that Mr. Swarthout was pursuing a cause of action against the developer. And in that scenario, Mr. Bleck would have gotten paid. It's that. I thought. Pardon me. Let me bring it to the point that I'm having a problem with, and I might as well get it resolved now. And that is, if that is in fact what the basis for recovery is, how do you reconcile that with the jury's verdict that found the defendant not guilty on the breach of contract? Well, I'm. Doesn't that suggest that the jury didn't buy your theory of recovery? That you're now pushing before us? Well, but the theory. Right. I mean, I agree that the jury did not find an implied contract as an implied contract, in fact. I understand that. But the trial and the case, what we were talking about, is what evidence would have been produced at trial, what discovery should have been given. And they knew that all of these bills were not paid. That's not a question. There was over $2 million on that sheet, on Exhibit A. It's not just Mr. Bleck's $187,000 that they got, okay? They got all the permits. They got all the approvals. They got landscaping and marketing materials. They got a lot of expensive materials, not just Bleck's plan. I know we're going over a little bit here, but by the time that Ryan Holmes got involved through your client's contacts, the Reillys had a falling out with him. Right. They didn't want to deal with him. How did that play into what occurred here? Your client knew that it was a dead end in terms of him dealing directly with the Reillys. Right. They were not going to deal solely with Mr. Swarthout. Right. And so that was the understanding that was testified to at trial, which was the Ryan Group would be the one approaching the Reillys to buy the property, on behalf of not just Ryan, but also on behalf of Swarthout. That was the understanding that Mr. Swarthout had and testified to. Mr. Ryan has said and testified to that that's false and was never going to be a partner. He stole his deal. He took all the plans. He built a project almost identical to this project, and he had all the information that showed it would be valuable and it would be a good investment. And it was that unjust enrichment that this court found based upon the benefit to Mr. Ryan, because Mr. Ryan didn't pay anything to Mr. Swarthout for any of the materials. And so the court looked at Mr. Ryan's own testimony as a worst-case scenario, $250,000 now, $250,000 of property, and one line. That doesn't take into account these expenses at all, because Justice McClaren is correct. The verdict was not guilty, and the jury was told, they got a specific instruction, do not consider the expenses if you are going to determine unjust enrichment. And don't consider Mr. Black's services unjust enrichment. True instruction. They told them that. And so I suggest to the court that even if there was a statement that was that correct that was made by Mr. Swarthout, it had no effect, it would have had no effect on this verdict. We would all be rewarding him, Mr. Swarthout, for his false testimony if we were to. I suggest that that's true, because there's only, this is the only misstatement. It's not a misstatement, it's a lie. You just articulated what the definition of a lie is, and it was a lie. I suggest to the court that even if this is a lie, which I guess you're going to assume for the purposes of this motion, what effect that would have had on the jury verdict of unjust enrichment, and Judge Barones found it would have no effect. It didn't have any effect. It couldn't have any effect, because the unjust enrichment wasn't based on the expenses of Mr. Swarthout, that he claimed was that he lied about. And if they had been, and so what do we find ourselves? We find ourselves with, going right back to where I started, which is, what is it, what's the defense that they would have had had they known this information? Had they known this information, what's the defense they would have had they would have defeated the plaintiff's claim? I suggest that Mr. Kozlowski confirm my suspicion that the defense would have been your client's allotment. I have a question. Mr. Morrison, I know I've seen you here before. I've been here a long time, and I know you have experience with the Gator. How do you answer discovery on the lawsuit, not just on the unjust enrichment, without receipts and contracts and bills produced by parties incurring these expenses? I mean, how does that happen? Especially when we're looking at $2 million. Well, when we answered them at our attorneys where we answered them, there was no follow-up from the defense that produced the actual bills. At the time of trial, I had, I didn't have all the bills. I had most of the bills. And I was trying to admit exhibit A. And the judge of interest said, well, where is the backup for this? And I kind of stumbled a little bit. I wasn't totally prepared to produce every single bill that was on me. And so the exhibit was not admitted, and no bills were admitted. So there wasn't any supplemental discovery tendered at some point in time? No. Okay. I don't have anything else. Thank you. Thank you. Mr. Kozlowski, you may proceed. Thank you, Your Honors. I'll start with what was Ryan Holmes, what Ryan Holmes' defense had been had we known the truth. Two things. Number one, Thomas Forthout's a liar, and he can't be believed, and therefore he should not be awarded any money on an unjust enrichment equitable claim. That's number one. Number two, the other defense that we would have had is, I think, potentially attacking the $1 million number. As what we know is not a million, we know it's $750,000, and we need to look at the veracity of those other expenses as well. Well, why were those jury instructions given about expenses, or why were those part of the jury instructions? I'm glad you brought that up. So the jury instruction, it doesn't say you can't consider black in unjust enrichment. The jury instruction is limited to damages. And it says, this is at A937 and A938 is the jury instruction, and it says the jury is not to take into account amounts paid to black in determining damages for unjust enrichment. And that jury instruction is an outgrowth of a motion in limine that was filed by Ryan Holmes to prevent the potential double recovery, having to pay both Forthout in the underlying trial potentially for amounts owed to black, and then having to face a second subsequent lawsuit by black. And it's in that response to that motion where Mr. Forthout said that he intends to pay the bills of black coming out of any award of the lawsuit, and that's at A964. I'd like also to address a few points raised by Mr. Morrison. First, he said that there's no dispute as to the value of black's work. That is completely inaccurate. There was no dispute at the time because we were relying on sworn answers, interrogatories, and testimony. Now, knowing that Mr. Forthout paid $0 for the plans, the engineering, and the approvals, all of which collected and were approved, these are the expensive materials that everyone thought, based on Mr. Forthout's fraud, was the basis of the unjust enrichment claim. Our client thought it. The court thought it. Excuse me, the trial court thought it. I think the opinion from this court makes clear that this court thought that was the case, and I think it's only reasonable to think that the jury thought the exact same thing. And we now know that that is not true. And so this jury verdict and judgment is based on a lie. It's based on a pattern of lies, starting with the interrogatory, then in the response to the motion to eliminate, and then a trial test at trial. The judgment was procured by fraud and cannot stand. Whether that's under 214.01, whether it's a meritorious defense, or whether it's based on the court's inherent authority, which was count two of our petition, which was also dismissed, which we have not really focused on today, but in either case, we should determine this dispute based on the truth. I don't have anything further. Any other questions? No, thank you. Thank you. We will take the case under advisement and a decision rendered in the court's adjournment.